**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------- X
                                                         :
JEWISH EDUCATIONAL MEDIA, INC.,                          :        No. 1:21-cv-00978-MKB-TAM
                                                         :
                     Plaintiff,                          :
                                                         :
            v.                                           :
                                                         :        ORAL ARGUMENT REQUESTED
MENDEL MINTZ AND SHMULY BUTLER,                          :
                                                         :
                     Defendants.                         :
                                                         :
-------------------------------------------------------- X
```

### PLAINTIFF JEWISH EDUCATIONAL MEDIA, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Douglas R. Nemec
Jordan A. Feirman
David M. Lamb
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000

*Attorneys for Plaintiff*
*Jewish Educational Media, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... iii

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ...........................................................................................2

    A.    JEM's Creation and Acquisition of Copyrighted Works Concerning the
          Rebbe ..................................................................................................................2

    B.    JEM's Intellectual Property Protection ...............................................................3

    C.    Defendants' Willful Infringement and Removal of CMI ......................................4

    D.    Defendants Continue to Infringe JEM's Works Despite Being Notified of
          the Infringement and the Ongoing Irreparable Harm to JEM ...............................5

ARGUMENT ..............................................................................................................6

I. APPLICABLE LEGAL STANDARDS .......................................................................6

II. DEFENDANTS FAIL TO DEMONSTRATE THAT THE COPYRIGHT CLAIMS
    (COUNTS I AND II) SHOULD BE DISMISSED AS A MATTER OF LAW .................7

    A.    Defendants Fail to Demonstrate That JEM's Claims Are Time-Barred as a
          Matter of Law ......................................................................................................7

          1.    *Defendants Ignore JEM's Allegations of Infringement Within the*
               *Statute of Limitations Period* ....................................................................8

          2.    *Defendants Mischaracterize the Allegations in the Complaint* .................10

    B.    JEM Has Not "Assert[ed] the Claims of Elkanah Shmotkin" and Has
          Sufficiently Alleged Standing to Bring Its Copyright and CMI Claims ...............11

    C.    JEM Has Not Brought Claims Based on Unregistered Copyrights ......................14

III. DEFENDANTS FAIL TO DEMONSTRATE THAT THE LANHAM ACT CLAIMS
    (COUNTS III AND IV) SHOULD BE DISMISSED AS A MATTER OF LAW ...........15

    A.    JEM Has Sufficiently Pled Conduct Satisfying What Defendants Call The
          "Statutory Standard" For Both Lanham Act Counts .............................................15

    B.    Defendants' Contention That The Lanham Act Claims Are Dismissible As
          A Matter of Law For Want of Defendants' "Economic Motivation" Lacks
          Any Merit .........................................................................................................16

    C.    *Dastar* and *Agence France* Do Not Bar JEM's Claims .......................................17

i

IV. DEFENDANTS FAIL TO DEMONSTRATE THAT THE CLAIM FOR UNFAIR
COMPETITION UNDER NEW YORK LAW (COUNT V) SHOULD BE
DISMISSED AS A MATTER OF LAW.........................................................................20

CONCLUSION....................................................................................................................21

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Agence France Presse v. Morel*,
    769 F. Supp. 2d 295 (S.D.N.Y. 2011)..........................................................................18, 19

*American Society for the Prevention of Cruelty to Animals v. J.C. Clothing Drive, Inc.*,
    No. 19-cv-4401 (BMC), 2020 WL 93884 (E.D.N.Y. Jan. 7, 2020) ..........................16, 17

*APL Microscopic, LLC v. United States*,
    144 Fed. Cl. 489 (2019) ...............................................................................................9

*Aurecchione v. Schoolman Transportation System, Inc.*,
    426 F.3d 635 (2d Cir. 2005).........................................................................................7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................................6

*Better Angels Society, Inc. v. Institute for American Values, Inc.*,
    419 F. Supp. 3d 765 (S.D.N.Y. 2019)...........................................................................17

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003)...........................................................................................18, 19, 20

*Dress for Success Worldwide v. Dress 4 Success*,
    589 F. Supp. 2d 351 (S.D.N.Y. 2008)..........................................................................17

*In re Dreyfus Aggressive Growth Mutual Fund Litigation*,
    No. 98 Civ. 4318(HB), 2000 WL 10211 (S.D.N.Y. Jan. 6, 2000)...................................11

*Fioranelli v. CBS Broadcasting Inc.*,
    232 F. Supp. 3d 531 (S.D.N.Y. 2017)..........................................................................19

*Fischer v. Forrest*,
    Nos. 14 Civ. 1304 (PAE) (AJP), 14 Civ. 1307 (PAE) (AJP), 2017 WL 128705
    (S.D.N.Y. Jan. 13, 2017), *report and recommendation adopted*, Nos. 4 Civ. 1304
    (PAE) (AJP), 14 Civ. 1307 (PAE) (AJP), 2017 WL 1063464 (S.D.N.Y. Mar. 21,
    2017) .............................................................................................................................9

*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*,
    139 S. Ct. 881 (2019)...................................................................................................14

*Gaffney v. Muhammad Ali Enterprises, LLC*,
    No. 20 Civ. 7113 (GBD)(OTW), 021 WL 3542256 (S.D.N.Y. Aug. 10, 2021) ..............11

*Harris v. City of New York*,
    186 F.3d 243 (2d Cir. 1999)................................................................8

*Hirsch v. Rehs Galleries, Inc.*,
    No. 18-CV-11864 (VSB), 2020 WL 917213 (S.D.N.Y. Feb. 26, 2020) ...........................7

*ICC Evaluation Service, LLC v. International Association of Plumbing & Mechanical Officials, Inc.*,
    No. 16-54 (EGS)(DAR), 2020 WL 1905132 (D.D.C. Apr. 17, 2020) ...........................12

*Kim v. Kimm*,
    884 F.3d 98 (2d Cir. 2018)................................................................7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).....................................................................12

*Matson v. Board of Education*,
    631 F.3d 57 (2d Cir. 2011)................................................................6

*Natural Resources Defense Council, Inc. v. U.S. Food & Drug Administration*,
    710 F.3d 71 (2d Cir. 2013)...............................................................12

*Penguin Books USA Inc. v. Walsh*,
    929 F.2d 69 (2d Cir. 1991)...............................................................14

*Petrella v. MGM*,
    572 U.S. 663 (2014).....................................................................9

*Rosen v. Brookhaven Capital Management, Co.*,
    194 F. Supp. 2d 224 (S.D.N.Y. 2002).....................................................8

*Ross v. Bank of America, N.A. (USA)*,
    524 F.3d 217 (2d Cir. 2005)..............................................................12

*Sadhu Singh Hamdad Trust v. Ajit Newspaper Advertising, Marketing & Communications, Inc.*,
    503 F. Supp. 2d 577 (E.D.N.Y. 2007) ....................................................9

*Sewell v. Bernardin*,
    795 F.3d 337 (2d Cir. 2015)...........................................................8, 10

*Shepard v. European Pressphoto Agency*,
    291 F. Supp. 3d 465 (S.D.N.Y. 2017)....................................................19

*SMJ Group, Inc. v. 417 Lafayette Restaurant LLC*,
    439 F. Supp. 2d 281 (S.D.N.Y. 2006)....................................................17

*Stone v. Williams*,
    970 F.2d 1043 (2d Cir. 1992)........................................................................9

*United We Stand America, Inc. v. United We Stand, America New York, Inc.*,
    128 F.3d 86 (2d Cir. 1997)..................................................................16, 17

*Warth v. Seldin*,
    422 U.S. 490 (1975)..........................................................................7, 12

## STATUTES

15 U.S.C. § 1114(1)(a)..................................................................................15, 16

15 U.S.C. § 1125(a)(1)(A)..................................................................................16

17 U.S.C. § 101.....................................................................................................8

17 U.S.C. § 411(b)..............................................................................................13

17 U.S.C. § 1202...................................................................................................8

28 U.S.C. § 1338(b).............................................................................................21

28 U.S.C. § 1367.................................................................................................21

## OTHER AUTHORITIES

5 McCarthy on Trademarks and Unfair Competition § 27:78....................................20

2 Nimmer on Copyright § 7.20[B][1]....................................................................13

3 Nimmer on Copyright § 8D.03[A][2][b] ........................................................18, 20

3 Nimmer on Copyright § 12.05[B][1][b] ................................................................9

Plaintiff Jewish Educational Media, Inc. ("**JEM**") respectfully submits this Opposition to the Motion to Dismiss the Complaint of Defendants Mendel Mintz and Shmuly Butler (together, "**Defendants**"), dated August 9, 2021 (the "**Motion**").

## PRELIMINARY STATEMENT

Defendants have confirmed for the Court what JEM has long understood:  Defendants believe that they are entitled to copy, widely disseminate, and publicly display and perform any and all works concerning the Rebbe at their leisure, unconstrained in any manner whatsoever by U.S. copyright law and without regard for the harm caused to copyright owners.  Long on rhetoric and spurious (and offensive) accusations about JEM, Defendants' Motion is essentially a press release declaring the supposed righteousness of their cause.  Defendants even take the remarkable step of soliciting additional infringement in their legal filing, stating that "[e]veryone is encouraged to visit RebbeDrive" to access materials "free of charge."  (Defendants' Memorandum of Law ("**Mot.**") at 2.)  This despite the fact that Defendants cannot deny that the RebbeDrive platforms are comprised of myriad JEM *copyrighted works*—not merely the "Rebbe's Torah" or his teachings—that Defendants have taken and used without authorization.

As much as Defendants seek to portray themselves as modern-day "Robin Hoods," it is clear that their attempt to avoid liability and secure a dismissal of all claims against them at the pleading stage is deficient, comporting with neither JEM's well-pled allegations nor applicable U.S. intellectual property law.  In fact, Defendants' attempt to carry their burden under Rule 12 relies heavily on mischaracterization of the Complaint and conclusory arguments, including overbroad positions that *all* claims against them must be dismissed even though it is indisputable that even if Defendants' legal theories had merit (and they do not), those theories only concern *subsets* of the copyrighted works and infringing acts alleged in this litigation.

Defendants do not attempt to explain why their limited positions should lead to wholesale dismissal of this action. Their specific legal arguments, too, are fatally flawed for the multiple reasons detailed below.

To be clear, Defendants are not denying that they have infringed; rather, they are positing that JEM has no recourse for Defendants' ongoing infringement due to purported technicalities; *e.g.*, that JEM supposedly waited too long to sue, or made mistakes on registration documents. But Defendants are wrong on the facts and the law and, at most, their technical arguments suggest potential fact issues that cannot be resolved at this stage. The Motion should be denied.

## STATEMENT OF FACTS

JEM's Complaint in this action (ECF No. 1, cited herein as "**Compl.**") and the exhibits thereto provide substantial detail concerning, *inter alia*, JEM's creation and acquisition of thousands of copyrighted works as part of its non-profit mission, the different forms of media that those works comprise, JEM's efforts to secure and protect its intellectual property rights, and Defendants' undisputed copying, distribution, and public display of JEM's works. Defendants tellingly ignore the bulk of JEM's allegations, and instead present a misleading and starkly oversimplified picture of the case. (Mot. at 3-4.) JEM respectfully refers the Court to the text of the Complaint itself for the complete allegations and summarizes pertinent facts herein.

## A.    JEM's Creation and Acquisition of Copyrighted Works Concerning the Rebbe

JEM is a nonprofit organization dedicated to archiving, preserving, producing, translating, and publishing audiovisual materials depicting the leading religious figure in the Chabad-Lubavitch religious movement—and a prominent figure in the Jewish community as a whole—the late Rebbe Menachem M. Schneerson ("the Rebbe"), of righteous memory. (Compl. ¶ 20.) For over four decades, JEM has served as a dynamic broadcaster and repository of audiovisual records of the Rebbe's public addresses, one-on-one audiences, and other events, all

of which provide a continued source of learning and inspiration for the Rebbe's followers and admirers. (*Id.* ¶¶ 2, 22.) JEM's collection comprises original recordings filmed by JEM at great investment—financial and otherwise—as well as thousands of works by third-party photographers and videographers, the copyrights in which JEM has meticulously acquired. (*Id.* ¶¶ 29, 31, 33, 35.)

Beyond merely authoring or acquiring these recordings, (Compl. ¶¶ 29-36), JEM and its staff have dedicated countless hours and millions of dollars to preserving, cataloging, and publishing the recordings with associated metadata, enabling the materials to be easily accessed by the interested public. (*Id.* ¶¶ 29, 32, 34, 38.) JEM has published a voluminous amount of this material through a variety of venues and formats, including more recently through online platforms such as JEM's websites, social media pages, and apps. (*Id.* ¶¶ 22-24.) JEM also regularly lends its expertise and resources, or licenses its works, to non-JEM projects to enable larger audiences to access and benefit from the recordings. (*Id.* ¶¶ 39, 47.)

In addition, JEM engages in extensive production of edited audiovisual materials including "hundreds of documentary features, inspirational videos and compilations on specific themes or teachings." (*Id.* ¶ 30.) These materials are created by JEM's team of professionals, including, but not limited to: archivists, researchers, writers, directors, producers, cinematographers, video editors, and translators. (*Id.* ¶¶ 26, 29.) Through this large-scale effort, JEM has not only built and shared a large collection of works spanning many forms of media, but also continues to create wholly original audiovisual works. (*Id.* ¶ 2.)

B.      **JEM's Intellectual Property Protection**

To date, JEM has obtained 418 U.S. copyright registrations in connection with its collections, encompassing thousands of hours of video and audio recordings, and hundreds of thousands of images of the Rebbe and the Chabad-Lubavitch movement. (*See* Compl. Ex. 1.)

As Defendants note (*see* Mot. at 7), of these 418 registrations, 23 currently list "Elkanah Shmotkin" as the "Owner/Claimant" (while the other 395 list JEM as the Owner/Claimant). As Defendants are well aware, Rabbi Shmotkin is JEM's Executive Director.[1]

JEM also as a federal trademark registration for its "JEM" logo (Reg. No. 4115121, the "**JEM Mark**"). (Compl. ¶¶ 7, 46.) The JEM Mark is prominently displayed as a watermark on many of JEM's audiovisual materials. (*Id.* ¶ 46.)

In keeping with its mission, JEM distributes and displays its works at public viewings and on-demand on a variety of platforms, including JEM's website, social media pages, and apps. (*Id.* ¶¶ 22, 24.) When JEM does so, it makes clear that it retains all intellectual property rights in the works and that unauthorized reproduction, distribution, or public display of the works is prohibited, including without limitation through use of: (i) the JEM Mark; (ii) disclaimers, notices, and other copyright management information identifying JEM as the copyright owner ("**CMI**"); and/or (iii) terms and conditions. (*Id.* ¶¶ 43, 46-47.)

## C.    Defendants' Willful Infringement and Removal of CMI

Defendants operate and control "RebbeDrive" media platforms, including without limitation the website RebbeDrive.com, social media pages, and GoogleDrive and YouTube repositories (the "**RebbeDrive Platforms**"). (Compl. ¶¶ 13-14.) The RebbeDrive Platforms contain thousands of photographs and audio and video recordings of the Rebbe, including hundreds of photographs and recordings lifted directly from JEM's databases without JEM's authorization. (*Id.* ¶ 48.) JEM works posted by Defendants on the RebbeDrive Platforms go well beyond mere unedited or "raw" footage of the Rebbe. (*Id.* ¶¶ 49, 57.)

---

[1]    *See* Jewish Educational Media, Inc., *Our Team*, https://jemcentral.org/our-team (last visited Sept. 23, 2021).

Although the Motion ignores them, the Complaint identifies specific examples of particular acts of infringement and unfair competition by Defendants. For example: (i) the incorporation of multiple JEM-produced recordings by RebbeDrive in a video performed at a public event on June 14, 2018 (*id.* ¶ 57); (ii) posting images from JEM's "The Living Archive" database on RebbeDrive.com, with the JEM watermark scrubbed and replaced with the RebbeDrive watermark (*id.* ¶ 58); and (iii) reproduction of JEM's copyrighted photographs in two children's books about the Rebbe, both of which were published in December 2019 (*id.* at ¶ 54). Even beyond defacing or scrubbing the JEM Mark from content (and sometimes replacing it with a "RebbeDrive" logo), Defendants also have incorporated the JEM Mark in communications and press releases promoting the RebbeDrive Platforms. (*Id.* at ¶¶ 6-7, 55-57.)

## D. Defendants Continue to Infringe JEM's Works Despite Being Notified of the Infringement and the Ongoing Irreparable Harm to JEM

JEM first learned that Defendant Mintz was infringing certain of JEM's copyrighted works on the RebbeDrive website and YouTube page in or around July 2016, and requested that he remove JEM works from those platforms. (*Id.* ¶ 59.) JEM has *not* alleged that by July 2016 it was aware of every single act of infringement by Defendant Mintz (or Defendant Butler) complained of, or of any acts of infringement on any other RebbeDrive Platforms (which may or may not have existed by that time). Nowhere in the Complaint is there any allegation that JEM notified Defendant Mintz of removal of CMI. Nor has JEM alleged that all of the infringing acts took place solely before that time; indeed, as noted above, JEM has specifically identified unauthorized uses of JEM works that commenced far more recently.

Despite being notified by JEM that their conduct is unlawful, Defendants have continued to copy, post, display, perform, and otherwise exploit JEM works both on the RebbeDrive Platforms and in other media promoting those Platforms, frequently for the purpose of soliciting

funding.  (*Id.* ¶¶ 55, 59, 60, 68, 69.)  Indeed, Defendants have acted defiantly, taunting JEM (and

JEM's counsel) for seeking to enforce the organization's intellectual property rights.  (*Id.* ¶ 56.)

As plainly alleged in the Complaint, Defendants' conduct has harmed JEM in numerous

ways, including by disrupting the market for licensing JEM's works, hampering JEM's ability to

fundraise, and creating consumer confusion by fostering a false perception that RebbeDrive is

sponsored by or affiliated with JEM.  (*Id.* ¶ 67.)  Defendants continue to post more unauthorized

content on an ongoing basis, free-riding off of JEM's immense expenditure of effort and

resources in collecting, preserving, restoring, and authoring its copyrighted works.  (*Id.* at ¶ 66.)

**ARGUMENT**[2]

**I.     APPLICABLE LEGAL STANDARDS**

In order to prevail on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of

Civil Procedure, a defendant must carry its burden to demonstrate that the complaint does not

plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009)).  In reviewing a motion to dismiss under Rule 12(b)(6), a

court must construe the complaint liberally, "accepting all factual allegations in the complaint as

---

[2]     Despite Defendants' ostensible preference not to litigate in this Court (Mot. at 3), they have *not*
sought dismissal in favor of proceedings in the Rabbinic Court (the "Beis Din"), and any attempt to
do so would be frivolous.  Accordingly, there is nothing in the "FORUM" section of Defendants'
Motion for JEM to address.  JEM is constrained to note, however, that Defendants' characterization
in their Motion of the parties' attempt to resolve this dispute before turning to this Court is inaccurate,
irrelevant, and—insofar as Defendants reference the parties' settlement discussions—wholly
inappropriate.

true, and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (internal quotation omitted).

A defendant may only prevail on a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure if the district court "lacks the statutory or constitutional power to adjudicate it." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (internal quotation omitted). "For purposes of ruling on a motion to dismiss for want of standing, [the district court] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

## II.     DEFENDANTS FAIL TO DEMONSTRATE THAT THE COPYRIGHT CLAIMS (COUNTS I AND II) SHOULD BE DISMISSED AS A MATTER OF LAW

Defendants assert three arguments to contend that JEM's claims for copyright infringement (Count I) and unlawful removal of copyright management information (Count II) should be dismissed as a matter of law:  (i) the claims are "time-barred;" (ii) JEM is "assert[ing] the Claims of" its Executive Director, Rabbi Elkanah Shmotkin; and (iii) JEM is "seek[ing] relief for copyrights that have not been registered."  (Mot. at 6-11.)  None of these three arguments has any factual or legal merit, but at all events, Defendants do not even attempt to explain how their legal theories could justify dismissal of *all* of JEM's claims when those theories, on their face, concern only subsets of the JEM works alleged to be infringed.

### A.     Defendants Fail to Demonstrate That JEM's Claims Are Time-Barred as a Matter of Law

The statute of limitations is an affirmative defense to infringement claims.  *Hirsch v. Rehs Galleries, Inc.*, No. 18-CV-11864 (VSB), 2020 WL 917213, at *3 (S.D.N.Y. Feb. 26, 2020).  Accordingly, a defendant seeking dismissal on statute of limitations grounds bears a

heightened burden of establishing that "it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law." *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015) (internal quotation omitted). It is insufficient to merely show that the plaintiff has not affirmatively alleged compliance with the statute of limitations, as "a plaintiff has no obligation to anticipate and refute potential affirmative defenses." *Rosen v. Brookhaven Cap. Mgmt., Co*, 194 F. Supp. 2d 224, 227 (S.D.N.Y. 2002); *see also Harris v. City of New York*, 186 F.3d 243, 251 (2d Cir. 1999).

As an initial matter, Defendants provide no basis to warrant dismissal of JEM's CMI removal claim (Count II) as time-barred. Defendants' conclusory and spurious contention that JEM "admits it was directly aware of the alleged infringement in 2016" does not address the separate violation of improperly removing CMI. Thus, the request for dismissal of the claim under 17 U.S.C. § 1202 can be denied out of hand.

Even with respect to the copyright infringement claim under 17 U.S.C. § 101 (Count I), Defendants fall well short of meeting the heightened standard for proving their affirmative defense.

1.     *Defendants Ignore JEM's Allegations of*
       *Infringement Within the Statute of Limitations Period*

As set forth above (*supra* at 5), JEM has alleged infringement occurring after February 23, 2018 (three years prior to the filing of the Complaint), both generally and by reference to certain specific examples. For example, JEM has alleged—and Defendants have confirmed in their Motion—that Defendants regularly tout "new releases on RebbeDrive.com" (Compl. ¶ 55), post infringing materials on RebbeDrive Platforms "on an ongoing basis" (*id.* at ¶ 66), use JEM's works to promote those platforms (*id.* at ¶¶ 68-69), and display JEM works through other mediums, such as public viewings and recently published children's books (*id.* at ¶¶ 54, 57).

Moreover, JEM's allegations in the Complaint also are broad enough to encompass repeated acts of infringement on the RebbeDrive Platforms, even if the initial instances of certain works being infringed may have taken place outside of the limitations period. (*See, e.g.*, *id.* at ¶ 66.) Those allegations belie any suggestion that a time-bar of JEM's claims is "clear from the face of the complaint" because courts in the Second Circuit follow the "separate accrual" rule, whereby "each infringing act starts a new limitations period" and "when a defendant commits successive violations, the statute of limitations runs separately from each violation." *Petrella v. MGM*, 572 U.S. 663, 671 (2014); *see also Stone v. Williams*, 970 F.2d 1043, 1049 (2d Cir. 1992) ("Each act of infringement is a distinct harm giving rise to an independent claim for relief.").

Accordingly, even if certain JEM works were initially uploaded to RebbeDrive Platforms prior to February 23, 2018—and even if JEM was aware of those specific uploaded works—the alleged use, display, and copying of those works on those platforms after that date give rise to new, independent claims. *See Fischer v. Forrest*, Nos. 14 Civ. 1304, 14 Civ. 1307, 2017 WL 128705, at *7 (S.D.N.Y. Jan. 13, 2017) (finding plaintiff plausibly alleged that "the infringement 'starting' [four years prior to filing suit] was the beginning of a longer course of action by defendants that has not ended"), *report and recommendation adopted*, 2017 WL 1063464 (S.D.N.Y. Mar. 21, 2017); *Sadhu Singh Hamdad Tr. v. Ajit Newspaper Advert., Mktg. & Commc'ns, Inc.*, 503 F. Supp. 2d 577, 585 (E.D.N.Y. 2007) ("[B]ecause defendants continue to use the [copyrighted work] in question, plaintiff's claims are not barred for any infringements that occurred within the three-year statute of limitations . . . ."); *APL Microscopic, LLC v. United States*, 144 Fed. Cl. 489, 498-99 (2019) (holding that each time a work hosted on a website is accessed constitutes a "display" of that work, giving rise to a new limitations period); *see also* 3 Nimmer on Copyright § 12.05[B][1][b] (explaining that the separate accrual rule does *not* bar an

infringement suit when infringement took place both inside and outside the 3-year period). Discovery will bear out how extensive Defendants' infringing activity has been.

### 2. Defendants Mischaracterize the Allegations in the Complaint

Defendants' contention that JEM was "directly aware of the alleged infringement" as of 2016 is conclusory and not sufficiently demonstrated by the allegations in the Complaint. (Mot. at 7.) Defendants point to only two allegations: (1) that Defendants have been unlawfully copying and displaying JEM's works on RebbeDrive Platforms "[s]ince at least as early as 2016" (Compl. ¶ 49); and (2) that JEM "first informed [Defendant] Mintz that his uses of JEM's Copyrighted Works . . . were unauthorized on July 4, 2016" (*id.* ¶ 59). Neither statement permits the sweeping conclusion that Defendants make. Missing from the allegations—but assumed by Defendants—are any suggestions that JEM was aware of, *inter alia*, numerous specific acts of infringement or works infringed, infringing activities on RebbeDrive Platforms other than the RebbeDrive website and YouTube page, and infringements by Defendant Butler. Thus, when Defendants contend that JEM was "directly aware of the alleged infringement," it only begs the question: *which* infringement? At best for Defendants, this fact issue is not resolvable on the Motion; certainly it is *not* "clear from the face of the complaint" that JEM's infringement claims are time-barred. *Sewell*, 795 F.3d at 339.

The same is true of Defendants' speculation that JEM "could have easily discovered" infringement as of 2016.[3] Defendants point to no allegation in the Complaint clearly evincing that JEM had constructive notice of all of the pertinent acts of infringement, nor do Defendants cite to any authority suggesting that the mere fact that the RebbeDrive website is "publicly

---

[3] The speculation is also legally irrelevant; as Defendants themselves recognize, the constructive knowledge requirement does not turn on what a plaintiff merely *could* have discovered. (Mot. at 6.)

accessible" is dispositive. To the contrary, even if all of the infringements alleged in the Complaint were on the RebbeDrive website as of July 2016, copyright owners "do not have a general duty to police their copyrights." *Gaffney v. Muhammad Ali Enters. LLC*, No. 20 Civ. 7113, 2021 WL 3542256, at *4 (S.D.N.Y. Aug. 10, 2021) (citation omitted). At most, Defendants once again are flagging a material fact issue that requires discovery. *See In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318, 2000 WL 10211, at *3 (S.D.N.Y. Jan. 6, 2000) (noting that questions of "constructive knowledge and inquiry notice should more properly be resolved by the trier of fact at a later stage in this litigation").

**B.      JEM Has Not "Assert[ed] the Claims of Elkanah Shmotkin" and Has Sufficiently Alleged Standing to Bring Its Copyright and CMI Claims**

Defendants contend that all of JEM's copyright and CMI claims must be dismissed because certain of JEM's copyright registrations list its Executive Director, Rabbi Elkanah Shmotkin, as the "Owner/Claimant." Based on this one fact alone, Defendants proclaim that JEM is attempting to "assert the [c]laims of" Rabbi Shmotkin and that JEM lacks both constitutional and statutory standing to do so. (Mot. at 7-8.) Defendants' arguments are misguided.

As an initial matter, this argument obviously has no bearing on the pertinent copyright registrations that do *not* list Rabbi Shmotkin as the "Owner/Claimant." Accordingly, there is no basis for Defendants' suggestion that Counts I and II of the Complaint should be dismissed in their entirety, and presumably Defendants will acknowledge in their reply submission that this argument only concerns those registrations listing Rabbi Shmotkin.

Even with respect to those registrations that do list Rabbi Shmotkin as "Owner/Claimant," Defendants' standing arguments lack any merit.[4]

With respect to JEM's constitutional standing, Defendants cannot seriously dispute that JEM has satisfied the minimal burden of meeting the requirements of Article III, and the citation to the general standing principles enumerated by the Supreme Court in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), does nothing to advance Defendants' position. It is well settled that establishing injury for Article III purposes is not an onerous requirement at the pleading stage. *See Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008) ("Injury in fact is a low threshold . . . ."). "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice," *Lujan*, 504 U.S. at 561, and, as with other aspects of a Rule 12 motion, the court generally accepts allegations concerning standing as true and construes the complaint in favor of the plaintiff. *See Seldin*, 422 U.S. at 501.

JEM has plainly pled that it has suffered concrete, particularized injury by virtue of Defendants' unlawful copying, display, and distribution of all of the works enumerated in Exhibit 2 to the Complaint, including allegations that Defendants' actions have disrupted JEM's licensing activities and its ability to fundraise. (Complaint ¶¶ 70, 75.) It is doubtless that this qualifies as injury-in-fact. *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013) ("Even a small financial loss is an injury for purposes of Article III standing."); *see also ICC Evaluation Serv., LLC v. Int'l Ass'n of Plumbing & Mech. Offs., Inc.*, No. 16-54, 2020 WL 1905132, at *7 (D.D.C. Apr. 17, 2020) (holding plaintiffs had "easily

---

[4] Although concededly outside the record for this Motion, JEM notes that the listing of Rabbi Shmotkin was in error, and JEM already has taken steps to amend the registrations to list "JEM" as the "Owner/Claimant," consistent with the listing on other registrations. Although JEM disputes that any amended pleading would be necessary to overcome the Motion, to the extent that the Court disagrees, allegations concerning the foregoing could be included in such a pleading.

satisf[ied] Article III standing's injury-in-fact requirement" where defendants alleged to have "copied and/or prepared derivative works" and "publish[ed] and distribut[ed] [works] on the Internet" (citations omitted)). Defendants do not cite any authority to suggest that the existence of Article III injury is tied to whether or not the aggrieved party is listed as "owner" on a copyright registration.

In truth, Defendants are conflating constitutional standing with statutory standing, the latter of which is the crux of their argument. Defendants contend that JEM is not the owner of any "legal rights and interests" that would give it standing to sue under the Copyright Act (Mot. at 8), but irrespective of what is listed on the registrations, JEM's Complaint plainly alleges that *it* has ownership rights in the works that have been infringed. (Compl. ¶¶ 2, 31, 35, 49.) At most, Defendants point to a fact issue about the information presented in 11 of the registrations listed in Exhibit 2 to the Complaint, but they do not establish as a matter of law that those registrations concern only "Shmotkin's works." (Mot. at 8.)

In fact, the Copyright Act expressly recognizes that a party is *not* precluded from bringing an infringement suit merely because of a mistake on a registration. In laying out the requirements for bringing suit for copyright infringement, Section 411(b) provides that a certificate of registration:

> satisfies the requirements of this section [*i.e.*, establishing registration as a prerequisite for a suit for infringement] . . . regardless of whether the certificate contains any inaccurate information, unless (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b); *see also* 2 Nimmer on Copyright § 7.20[B][1] (noting that courts are generally "lenient . . . with respect to any innocent error contained in an application for a registration certificate.").

Accordingly, the listing of Rabbi Shmotkin as owner on several of the infringed copyright registrations does not establish as a matter of law that JEM lacks statutory standing with respect to those registrations.

**C.      JEM Has Not Brought Claims Based on Unregistered Copyrights**

It is unclear what Defendants are seeking to "dismiss" when they lengthily expound on the now firmly established rule—articulated by the Supreme Court in *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019)—that copyright registrations (not merely completed applications) are required to bring infringement lawsuits under the U.S. Copyright Act.  (Mot. at 8-9.)  There are *no* infringement claims by JEM based on Defendants' misappropriation of copyrighted works that are not yet the subject of completed registrations. Defendants are well aware of this; not only does the Complaint itself make the point (*see, e.g.,* Compl. ¶ 72), but to the extent there remained any confusion, JEM reminded Defendants of this fact in its July 2, 2021 response to Defendants' pre-motion conference letter, stating that "the Complaint *may be amended* once the [pending] registrations have issued."  (ECF No. 16, at 2 (emphasis added).)

Simply put:  Defendants are seeking to dismiss claims that do not exist, and there is no relief for the Court to grant.[5]

---

[5]    To the extent that Defendants are taking issue with JEM's reservation of rights to seek amendment of its pleading to add more infringed works upon their registration, that issue is not ripe for adjudication. JEM has not yet sought amendment, so there is no motion for the Court to address.  Any "ruling" with respect to an as-of-yet-unrequested amendment of the pleading would be purely advisory and outside the scope of the Court's subject matter jurisdiction.  *See Penguin Books USA Inc. v. Walsh*, 929 F.2d 69, 72 (2d Cir. 1991) (noting that federal courts "lack[] the power . . . 'to decide questions that cannot affect the rights of litigants in the case before them'" (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

**III.** **DEFENDANTS FAIL TO DEMONSTRATE THAT THE LANHAM ACT CLAIMS (COUNTS III AND IV) SHOULD BE DISMISSED AS A MATTER OF LAW**

Defendants' arguments seeking dismissal of JEM's federal claims for trademark infringement (Count III) and false association/false designation (Count IV) misconstrue JEM's allegations as well as the protections encompassed within the Lanham Act.

**A.** **JEM Has Sufficiently Pled Conduct Satisfying What Defendants Call The "Statutory Standard" For Both Lanham Act Counts**

Defendants' first two arguments are that the conduct alleged by JEM does not fall within the "statutory standard" of Sections 1114 and 1125 of the Lanham Act, by which Defendants appear to mean the scope of activity that the statutes identify as unlawful. That is simply false, and tellingly Defendants cite to no legal authority whatsoever in support of their position.

Section 1114(1)(a) of the Lanham Act renders actionable, *inter alia*, the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). JEM has alleged that Defendants have reproduced and used the federally registered JEM Mark both when unlawfully utilizing JEM's works and by "incorporat[ing]" the JEM Mark in "communications on RebbeDrive.com and social media," and further that such reproduction and use is likely to cause consumer confusion. (Compl. ¶ 7; *see also id.* ¶¶ 50, 57, 85, 86.) The so-called "statutory standard" of Section 1114(a) has been satisfied.[6]

---

[6] Without any explanation—let alone supporting authority—Defendants suggest that the pleading is deficient because they "used the registered mark intact" in their unlawful posts. (Mot. at 11.) Such "intact" use, however, is plainly subsumed within Section 1114's references to "reproduction, counterfeit, or copy," separate and apart from a "colorable imitation." 15 U.S.C. § 1114(1)(a); *see*

*(cont'd)*

Section 1125 of the Lanham Act prohibits, *inter alia*, use of any "word, term, name, symbol, or device" that is likely to "cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A). JEM's Complaint alleges that Defendants have utilized JEM's name and logo in "communications on RebbeDrive.com and social media" to "create a false association between JEM and RebbeDrive, as well as to suggest that JEM's materials are in fact owned by RebbeDrive," and that these deceptions are likely to cause consumer confusion. (Compl. ¶¶ 7, 50, 90-91.) Furthermore, JEM alleges that Defendants also utilize the "RebbeDrive" logo in connection with JEM works, bolstering the aforementioned false association and designation of origin. (*Id.* at ¶¶ 6, 55.) Defendants' assertion that JEM has alleged that Defendants "merely post[ed] Plaintiff's video with Plaintiff's trademark" is simply not true. (Mot. at 11.) Here, too, the so-called "statutory standard" has been satisfied.

## B. Defendants' Contention That The Lanham Act Claims Are Dismissible As A Matter of Law For Want of Defendants' "Economic Motivation" Lacks Any Merit

Defendants cannot point to a single authority as support for their apparent position that the Lanham Act does not apply to their misconduct because they claim to not be "engaged in for-profit sales" of Rebbe-related works. (Mot. at 13-14.) In fact, the only case Defendants cite is a Second Circuit decision holding that the "use in commerce" requirement does *not* "limit the Lanham Act to profit-seeking uses of a trademark," and making clear that the statute's reference to "commerce" is not a restriction to for-profit business activity, but rather broadly "reflects Congress's intent to legislate to the limits of its authority under the Commerce Clause." *United*

---

also *Am. Soc'y for the Prevention of Cruelty to Animals v. J.C. Clothing Drive, Inc.*, No. 19-cv-4401 (BMC), 2020 WL 93884, at *1-2 (E.D.N.Y. Jan. 7, 2020) (in granting a plaintiff's motion for default judgment, finding that the plaintiff plausibly alleged violations of both § 1114 and § 1125 where the defendant reproduced the plaintiff's mark in its entirety on flyers distributed to the public).

*We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86, 92 (2d Cir. 1997); *see also Am. Soc'y for the Prevention of Cruelty to Animals*, 2020 WL 93884, at *1-2 (allegations of mark use to solicit donations deemed use in commerce); *SMJ Grp., Inc. v. 417 Lafayette Rest. LLC*, 439 F. Supp. 2d 281, 287-88 (S.D.N.Y. 2006) (defendants' distribution of leaflets as part of a "[not-for-profit] scheme" was nonetheless a "service" as defined by the Lanham Act (internal quotation and citation omitted)). If Defendants were correct about the scope of the Lanham Act, it would lead to the absurd and plainly false proposition that organizations lacking a "profit" motive could utilize any other party's registered trademark that they wished. *See, e.g.*, *Better Angels Soc'y, Inc. v. Inst. for Am. Values, Inc.*, 419 F. Supp. 3d 765, 777, 780 (S.D.N.Y. 2019) (granting summary judgment on trademark infringement claim where both parties were "civic-discourse-oriented non-profit organizations"); *Dress for Success Worldwide v. Dress 4 Success*, 589 F. Supp. 2d 351, 363 (S.D.N.Y. 2008) (granting preliminary injunction preventing non-profit organization from utilizing formerly-affiliated non-profit's registered mark).

Nor is there any basis for Defendants' self-serving assertion that Defendants' actions are "entirely bereft of any economic or financial motive whatsoever." (Mot. at 14.) Whatever gains and benefits Defendants seek from operating the RebbeDrive Platforms and theft of JEM's intellectual property are questions of fact to be addressed in discovery, and JEM has plainly alleged that Plaintiffs "solicit donations," "free-ride on JEM's reputation and goodwill," and otherwise seek to benefit themselves and RebbeDrive from a false affiliation with JEM. (Compl. ¶¶ 1, 7, 69, 91, 97.)

## C.  *Dastar* **and** *Agence France* **Do Not Bar JEM's Claims**

Defendants assert that because this case primarily centers around what they refer to as "communicative products" (*e.g.*, photographic and audiovisual works), the Lanham Act cannot provide redress. (Mot. at 12-14.) Defendants rely exclusively on *Dastar Corp. v. Twentieth*

*Century Fox Film Corp.*, 539 U.S. 23 (2003) and *Agence France Presse v. Morel*, 760 F. Supp. 2d 295 (S.D.N.Y. 2011), but the holdings in those cases are inapposite.

As an initial matter, *Dastar* and *Agence France* solely address unfair competition claims brought under Section 1125 of the Lanham Act, not claims for trademark infringement brought under Section 1114. *See, e.g.*, *Dastar*, 539 U.S. at 31; *Agence France*, 769 F. Supp. 2d at 307-08; *see also* 3 Nimmer on Copyright § 8D.03[A][2][b] ("[T]he [*Dastar*] Court's opinion construed only the "origin" clause contained in the first paragraph of Section 43(a) [of the Lanham Act, *i.e.*, § 1125(a)]."). Because JEM alleges, *inter alia*, that Defendants have used JEM's federally registered trademark without authorization in Count III of the Complaint, *Dastar* and *Agence France* do not provide grounds for dismissal of that Count.[7]

With respect to their impact on claims under Section 1125, *Dastar* and *Agence France* concern the distinguishable circumstance of misrepresentation of the authorship of a copyrightable work. For example, at issue in *Dastar* was the defendant's use of the plaintiff's copyrighted material in videos that the defendant itself produced, and the confusion alleged by the plaintiff was over the authorship of the copyrighted works. *See Dastar*, 539 U.S. at 26-28. Given those facts and allegations, the *Dastar* court held that the "origin" clause of Section 43(a) of the Lanham Act did not apply to the plaintiff's claim, because actionable confusion under that

---

[7]   In the alternative, even if *Dastar* were applicable to claims brought under Section 1114, it would still not support dismissal of JEM's trademark infringement claim. As discussed in depth below, neither JEM's Section 1114 claim nor JEM's Section 1125 claim is premised on a likelihood of confusion as to the *authorship* of creative works, which is the type of argument addressed by the *Dastar* rule. *See Dastar*, 539 U.S. at 34-35. Instead, JEM claims that Defendants' use of JEM's federally registered mark is likely to cause confusion as to the source of the goods and services provided by the Defendants on the RebbeDrive Platforms. (Compl. ¶ 86.) As noted above (*supra* at 15), this is the precise harm addressed by the plain language of Section 1114.

clause related to the origin of the goods themselves, not the authorship or creative origin of the underlying material.  *See id.* at 31-32.

Similarly, the holding in *Agence France* was premised on the fact that the plaintiff's Lanham Act claim stemmed from an alleged "false designation of [the work's] *authorship*." *Agence France,* 769 F. Supp. 2d at 307 (emphasis added).  In *Agence France*, the plaintiff alleged that the defendants had failed to give proper credit to the creators of certain photographs, and wrongfully suggested that the defendants were the "source" of the images.  *See id.* at 307-08. The court held that these claims were foreclosed by *Dastar* because they concerned the creative authorship of the underlying work, as opposed to the source of the physical goods being sold. *See id.*

Here, however, JEM is not alleging that Defendants' actions result in confusion as to the origin of the JEM works from a creative or authorship standpoint (indeed, a portion of the infringed works were not authored by JEM).  Instead, JEM alleges that Defendants have misrepresented that they are the source of the works as "tangible" goods in their present, digital format.[8]  *Dastar* itself expressly notes that this type of claim is not foreclosed.  *See* 539 U.S. at 31 ("[A Section 1125 claim] would undoubtedly be sustained if [the defendant] had bought some of [the plaintiff's] videotapes and merely repackaged them as its own."); *see also Shepard v. European Pressphoto Agency*, 291 F. Supp. 3d 465, 469-70 (S.D.N.Y. 2017) (denying motion to dismiss artists' false designation of origin claim under Section 1125 because the plaintiffs' watermarked artwork constituted not only creative works, but also "tangible goods that are

---

[8]     Though *Dastar's* discussion of "tangible goods" arose in the context of a set of videotapes published in 1995, *Dastar*'s reasoning is technology-neutral.  Accordingly, whether or not a good is "tangible" in a literal sense or only as a set of data should not alter the *Dastar* analysis.  *See Fioranelli v. CBS Broad. Inc.*, 232 F. Supp. 3d 531, 540-41 (S.D.N.Y. 2017) (holding that the "producer of [a] television program" or "film[]" is the "producer of tangible goods" for *Dastar* analysis purposes).

offered for sale" within the meaning of *Dastar*); 5 McCarthy on Trademarks and Unfair Competition § 27:78 (concluding that "*Dastar* precludes only claims that defendant is causing confusion about who is the author or inventor of the creative work. It does not preclude claims that defendant is causing confusion as to who created or authorized the tangible goods sold by defendant."); 3 Nimmer on Copyright § 8D.03[A][2][b] ("[H]ad Dastar sold products manufactured by Fox with its own name substituted, it would have been liable [under Section 1125].").

In short, JEM alleges here what neither the plaintiffs in *Dastar* nor *Agence France* did: Defendants are misrepresenting the origin of JEM's works by "merely repackag[ing]" the works as their own, a claim which *Dastar* does not preclude. *Dastar*, 539 U.S. at 31. Furthermore, in doing so, Defendants falsely suggest that they have an "affiliation, connection, or association" with JEM – not as an author, but as an organization. (Compl. ¶¶ 90, 91.) For this reason, Defendants' statement that JEM's claims "arise exclusively from 'communicative products'— videos and pictures of the Rebbe" (Mot. at 13)—cannot be squared with the Complaint. JEM's false affiliation claim is premised on actions undertaken by Defendants separate and apart from their reproduction of JEM's works, and therefore it also does not implicate *Dastar*.

## IV. DEFENDANTS FAIL TO DEMONSTRATE THAT THE CLAIM FOR UNFAIR COMPETITION UNDER NEW YORK LAW (COUNT V) SHOULD BE DISMISSED AS A MATTER OF LAW

Defendants assert two unconvincing arguments for dismissal of the common law claim.

*First*, Defendants contend that *Dastar* precludes the New York cause of action for the same reasons that the Section 1125 claim purportedly is precluded. As discussed above, Defendants are incorrect about the nature of JEM's allegations and the applicability of *Dastar*; accordingly, this is not a basis to dismiss the state law unfair competition claim.

**Second**, Defendants posit that the Court lacks supplemental jurisdiction over the New York claim under 28 U.S.C. § 1367 and original jurisdiction under 28 U.S.C. § 1338(b) because JEM's copyright and Lanham Act claims will be dismissed "in their entirety." (Mot. at 15.) As detailed above (*supra* at 7), however, even if Defendants' legal theories had any merit, they could not result in the dismissal of *all* of JEM's federal claims; in the very best case scenario for Defendants, *some* of JEM's claims still survive the Motion. Defendants' argument thus is based on a false premise, and the Court plainly will retain both original and supplemental jurisdiction.

## <u>CONCLUSION</u>

For the foregoing reasons, JEM respectfully submits that Defendants' Motion to Dismiss JEM's Complaint should be denied in its entirety.

Date: September 27, 2021

Respectfully submitted,

   /s Jordan A. Feirman
Jordan A. Feirman
Jordan.Feirman@probonolaw.com
Douglas R. Nemec
Douglas.Nemec@probonolaw.com
David M. Lamb
David.Lamb@probonolaw.com
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000

*Attorneys for Plaintiff*
*Jewish Educational Media, Inc.*